TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANGELA C. MAKABALI (Cal. Bar No. 296824)
Special Assistant United States Attorney
JENNA W. LONG (Cal. Bar No. 332192)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2331/8692
    Facsimile: (213) 894-0141
    E-mail:   angela.makabali@usdoj.gov
              jenna.long@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>ARTEMIO GUZMAN-LOPEZ,<br><br>              Defendant. | No. CR 20-535-PA-1<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ARTEMIO GUZMAN-LOPEZ<br><br>Hearing Date: November 8, 2021<br>Hearing Time: 1:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Percy Anderson |

        Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Special Assistant United States Attorney Angela C. Makabali, and Assistant United States Attorney Jenna W. Long, hereby files its Sentencing Position for defendant Artemio Guzman-Lopez.

///

///

///

///

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Report ("PSR") filed by the United States Probation and Pretrial Service Office ("USPO"), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 18, 2021            Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/ Angela C. Makabali
ANGELA C. MAKABALI
Special Assistant United States
Attorney
JENNA W. LONG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendant Artemio Guzman-Lopez smuggled 17 people by piloting a boat into the United States for the purpose of his own financial gain.  He knew that the passengers were not citizens of the United States, and he brought them illegally into the United States for profit.  Each of the passengers had agreed to pay between $12,000 and $19,000 upon arrival in the United States.  Defendant pleaded guilty to counts four and five (aiding and abetting bringing aliens to the United States for private financial gain in violation 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2(a)) of a seven-count indictment, pursuant to a written plea agreement and now faces a three-year mandatory minimum sentence for his crime.

The government concurs with the United States Probation and Pretrial Services Office ("USPO") that the applicable Guidelines offense level is 17, the criminal history category is II, and the Guidelines sentence is the statutory mandatory-minimum sentence of 36 months' imprisonment.  This Court previously sentenced co-defendant Javier Acosta-Alcaraz, who navigated and refueled the boat while defendant drove, to the mandatory minimum of 36 months' imprisonment. (Dkt. 110.)  For the reasons set forth below, the government recommends that the Court sentence this defendant as well to 36 months' imprisonment, followed by a three-year term of supervised release, and the mandatory $200 special assessment.

## II.   OFFENSE CONDUCT

Defendant smuggled 17 aliens, including J.R.R. and L.A.M. (together, the "aliens"), into the United States by panga boat, an

1

open-topped fishing vessel.  (PSR ¶¶ 15, 17.)  The 17 aliens arranged with others in Tijuana, Mexico to enter the United States illegally, and unknown individuals drove the aliens to Baja, Mexico on October 12, 2020 for transport.  (Id. ¶ 15.)

Defendant and the aliens boarded the panga boat the next day. (Id. ¶ 16.)  Co-defendant Acosta-Alcaraz ("co-defendant") navigated the GPS and refueled the boat while defendant piloted the boat.  (PSR ¶ 17.)  Defendant knew that he, co-defendant, and the 17 passengers were undocumented persons without authorization to come to the United States and that the passengers had arranged to pay between $12,000 and $19,000 for being smuggled into the United States.  (Id. ¶¶ 15, 25.)

The passengers experienced crowded, dangerous, and inhumane conditions.  (Id. ¶ 43.)  One passenger reported that while helping to navigate, defendant smoked cigarettes despite his proximity to three barrels of gasoline on the boat.  (Id. ¶¶ 18, 43.)  At least one passenger reported that he feared for his life, given the rough waters and the boat's high speed.  (Id. ¶ 18.)  The passengers did not receive food or water for at least 24 hours, nor did they receive any protection from the elements.  (Id. ¶ 43.)  Indeed, when the United States Coast Guard rescued the passengers, some of them asked for water and/or food.  (Id.)  The boat, with 19 people aboard, was at or beyond full capacity.  (Id.)

Compounding the already dangerous conditions, the boat's engine stopped running approximately 30 miles off the coast of San Clemente Island, the southern tip of which is approximately 40 miles north of the maritime U.S.-Mexico border.  (Id. at ¶ 19.)  In order to get

safely to shore, the passengers used their hands, life jackets, and debris torn from the boat to paddle the vessel until it arrived at San Clemente Island.  (Id. ¶ 43.)  One passenger reported that he feared for his life because he was not a strong swimmer.  (Id.)

**III.  GUIDELINE CALCULATIONS**

The USPO calculated a total offense level of 17 and a criminal history category of II, resulting in a Guidelines range of 27-33 months' imprisonment.  The Guidelines sentence is a term of 36 months' imprisonment pursuant to the statutory mandatory minimum sentence under 8 U.S.C. § 1324(a)(2)(B)(ii) and U.S.S.G. § 5G1.2(b). The government agrees with these calculations.

In the PSR, the USPO determined that defendant's base offense level was 12.  (PSR ¶ 34; Plea Agreement ¶ 16.)  The PSR and the plea agreement applied a three-level increase for offense conduct involving six to twenty-four unlawful aliens under U.S.S.G. § 2L1.1(b)(2)(A) (PSR ¶ 36; Plea Agreement ¶ 16), a two-level increase because defendant has previously sustained a conviction for a felony immigration offense under U.S.S.G. § 2L1.1(b)(3)(A) (PSR ¶ 38, Plea Agreement ¶ 16), and a two-level increase because defendant recklessly created a substantial risk of death or serious bodily injury to the 17 other passengers of the panga boat (PSR ¶¶ 43-44, Plea Agreement ¶ 16), resulting in an adjusted offense level of 19 (PSR ¶ 52, Plea Agreement ¶ 16).

The PSR applied a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, making the total offense level 17.  (PSR ¶¶ 54-56.)  Given that the government already begun significant preparation for trial and motion practice had concluded

3

prior to defendant notifying the government of his intention to plead guilty two weeks shy of trial, the government does not recommend, and the PSR did not apply, an additional one-level reduction pursuant to U.S.S.G. § 3E1.1.  (See Plea Agreement ¶ 3d.)

Further, the USPO found that defendant has three criminal history points, which puts him in criminal history category II.  (PSR ¶¶ 62-63.)  Without the statutory mandatory minimum sentence, a total offense level of 17 and criminal history category of II, would yield a Guidelines range of 27 to 33 months' imprisonment.  (PSR ¶ 94.)  However, because the statutorily mandated minimum sentence is 36 months' imprisonment, the USPO determined that, pursuant to U.S.S.G. § 5G1.2(b), the Guidelines range is adjusted to the mandatory minimum, resulting in an applicable term of 36 months' imprisonment.  (PSR ¶¶ 100, 101.)  The government agrees with the calculations set forth in the PSR.

## IV.   THE GOVERNMENT'S SENTENCING POSITION

After considering the factors set forth in 18 U.S.C. § 3553(a), a sentence of 36 months' imprisonment--the applicable statutory mandatory minimum sentence--and a three-year term of supervised release is appropriate here.

As an initial matter, smuggling people for private financial gain is a serious offense that risked the lives of those smuggled.  See 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (C).  Here, defendant smuggled people into the United States from Baja, Mexico.  (PSR ¶ 16.)  The 17 passengers planned to pay unknown co-conspirators large amounts of money ($12,000 to $19,000) upon arrival to the United States.  (Id. ¶ 25.)  Defendant piloted the passengers on an

overcrowded boat travelling at high rates of speed, with the trip culminating in the boat breaking down about 30 miles from the nearest land and leaving the passengers stranded in the middle of the ocean without adequate food or water.  (PSR ¶¶ 16, 19, 43.)  Using their hands, life jackets, and pieces of the boat itself, the aliens paddled the boat for several hours until they reached land.  (Id. ¶ 43.)

A 36-month sentence adequately accounts for defendant's mitigating circumstances.  Though close to trial, defendant ultimately admitted and accepted the responsibility for his conduct.  (PSR ¶¶ 30, 54-55.)  Second, defendant claims that he previously maintained steady employment in Mexico as either a fisherman or a farmer for the past 30 years, earning an average of 100 pesos a day, and plans to return to farming upon his release from custody.  (PSR ¶¶ 73, 83.)  These facts further support the government's sentencing recommendation.

As to supervised release, in this case, defendant will likely be deported following his term of imprisonment.  However, for the following reasons, the government urges the Court to impose the maximum three-year term of supervised release.  The Sentencing Guidelines advise that sentencing courts ordinarily should not impose a term of supervised release for aliens who are likely to be deported after a period of imprisonment.  See U.S.S.G. § 5D1.1(c).  The commentary provides that "[t]he court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular

case." U.S.S.G. § 5D1.1 cmt. n.5.

District courts have wide latitude in imposing conditions of supervised release. United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010); United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006). A sentencing court even has broad discretion to impose conditions of supervised release in addition to those mandated by statute. 18 U.S.C. § 3583(d) (providing that district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate"). The Sentencing Guidelines, tracking the language of 18 U.S.C. § 3553(a) concerning imposition of sentence, recognize this broad discretion:

> The [district] court may impose other conditions of
> supervised release to the extent that such conditions are
> (1) reasonably related to (A) the nature and circumstances
> of the offense and the history and characteristics of the
> defendant; (B) the need for the sentence imposed to afford
> adequate deterrence to criminal conduct; (C) the need to
> protect the public from further crimes of the defendant;
> (D) the need to provide the defendant with needed
> educational or vocational training, medical care, or other
> correctional treatment in the most effective manner; and
> (2) involve no greater deprivation of liberty than is
> reasonably necessary for the purposes set forth above and
> are consistent with any pertinent policy statements issued
> by the Sentencing Commission.

U.S.S.G. § 5D1.3(b).

1    In this case, the imposition of supervised release would provide
2    an "added measure of deterrence and protection" that is warranted
3    under the facts of this case.  See U.S.S.G. § 5D1.1 cmt. n.5.  First,
4    in light of defendant's previous federal conviction for substantially
5    similar conduct, smuggling aliens into the United States by panga
6    boat, the imposition of a three-year supervised release term would
7    provide a needed additional incentive for defendant to refrain from
8    unlawfully returning to the United States.  (Plea Agreement at 9; PSR
9    ¶ 61.)  If defendant were unlawfully to re-enter, the terms of
10   defendant's supervised release could be deemed violated, regardless
11   of whether the government sought a Section 1326 prosecution.  Second,
12   the Court should also order a three-year term of supervised release
13   because defendant poses a danger to the community due to his criminal
14   history.  See U.S.S.G. § 5D1.1b cmt. n.3(A-B) (noting factors to be
15   considered in determining whether to impose a term of supervised
16   release and stating that "[t]he court should give particular
17   consideration to the defendant's criminal history (which is one
18   aspect of the 'history and characteristics of the defendant'").

19   During his plea colloquy, defendant agreed to a factual basis
20   stating his August 15, 2016 conviction for conspiracy to bring aliens
21   into the United States in violation of 8 U.S.C.
22   §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(i), and (a)(1)(B)(i), as noted in
23   the PSR.  (PSR ¶¶ 61.)  The PSR also found that defendant illegally
24   entered the United States previously on January 31, 2012.  (Id.
25   ¶¶ 66-67.)  Defendant's repeated criminal conduct indicates that his
26   prior sentence has been insufficient to deter future unlawful
27   conduct--indeed, substantially similar conduct; it further indicates
28

7

a general disrespect for the law and willingness to return to the United States despite his lack of authorization.  The imposition of supervised release is thus appropriate in this case to effectively protect the public from any future crimes of defendant.  There would be no greater deprivation of liberty than necessary and no undue expenditure of USPO resources, because there would be no reporting requirement for defendant unless he actually returned to the United States again.

Since the Sentencing Guidelines are advisory only, and in light of the broad discretion afforded the Court in this area, the government recommends that the Court find, consistent with the commentary to Section 5D1.1, that supervised release is appropriate under the facts and circumstances of this case.  See United States v. Apodaca, 641 F.3d 1077, 1081 (9th Cir. 2011) (concluding that Sentencing Guidelines for supervised release are advisory only); Blinkinsop, 606 F.3d at 1118; Weber, 451 F.3d at 557.  Accordingly, this Court should impose a three-year term of supervised release.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose the following sentence: (1) 36 months' imprisonment; (2) a three-year period of supervised release under the terms and conditions recommended by the USPO; and (3) a $200 mandatory special assessment.